**UNITED STATES DISTRICT COURT**　　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:11-CR-43(2) |
| | § | |
| DAVID ARZON | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant David Arzon's ("Arzon") *pro se* Emergency Motion for Compassionate Release and Appointment of Counsel wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons" (#134). The Government filed a response in opposition (#138) to which Arzon filed a Reply (#146). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.　　Background

On April 6, 2011, a federal grand jury in the Eastern District of Texas returned a one-count Indictment, charging Arzon with Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A). On August 12, 2019, Arzon pleaded guilty without a plea agreement to Count One of the Indictment. Arzon was sentenced on May 5, 2020, to 135 months' imprisonment followed by five years' supervised release. Judgment was entered on the same day. Arzon appealed, and the United States Court of Appeals for the Fifth Circuit affirmed his conviction and sentence on March 31, 2021. Arzon is currently housed at Federal Correctional Institution Fort Dix ("FCI Fort

Dix"), located at Joint Base MDL in Fort Dix, New Jersey. His projected release date is October 8, 2027. Arzon filed his Motion for Compassionate Release on February 26, 2024, wherein he asserts that the following "extraordinary and compelling reasons" justify his release: (1) his rehabilitation; (2) deprived conditions suffered during the pandemic; (3) inadequate medical care and/or negligence preventing Arzon from providing self-care; (4) he was entitled to an offense level reduction of three points for acceptance of responsibility; (5) that he is the only caregiver available for his elderly mother who suffers from stage 4 cancer; (6) ongoing outbreaks of infectious disease and ongoing public health emergencies at FCI Fort Dix; and (7) that his criminal history points calculation was in error.

## II.    Appointment of Counsel

Arzon requests the appointment of counsel to assist him in filing this motion for compassionate release. There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a

2

conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Garza*, No. 24-40425, 2025 WL 429978, at *1 (5th Cir. Feb. 7, 2025); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Arzon is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Arzon provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Arzon is 54 years old and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Arzon's motion for appointment of counsel is denied.

III.    Compassionate Release

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

*See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission had issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family

6

circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant

7

file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *Id*.

Here, the record reflects that on December 16, 2023, Arzon submitted a request for compassionate release to R. Thompson, the warden of the facility where he is housed.  On December 28, 2023, Warden Thompson denied Arzon's request, explaining that Arzon failed to submit a request with one specific category under Program Statement No. 5050.50.[2]  Although it appears Warden Thompson denied the request for compassionate release as procedurally

---

[2] It appears Arzon submitted another request that was denied for the same reason by the Reduction In Sentence ("RIS") Coordinator, K. Byrd, on February 15, 2024.

improper, the Government here concedes that Arzon exhausted his administrative remedies. Even if there is some question as to proper exhaustion, if the Government does not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief, it has waived any nonjurisdictional, procedural filing requirement. *See McLean*, 2022 WL 44618, at *1 (holding that it is an abuse of discretion for the district court to deny a motion for compassionate release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement when the Government did not raise exhaustion). Nevertheless, while Arzon may have complied with the exhaustion requirement before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

C.     <u>Medical Condition</u>

In the pending motion, Arzon contends that he is eligible for compassionate release due to his medical condition. With respect to a defendant's medical circumstances, § 1B1.13(b)(1)(A)-(D) states that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(A)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

(B)     The defendant is—

(i)     suffering from a serious physical or medical condition,

(ii)     suffering from a serious functional or cognitive impairment, or

(iii)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)     The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)     The defendant presents the following circumstances—

(i)     the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal state, or local authority;

(ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak or infectious disease or the ongoing public health emergency described in clause (i); and

(iii)   such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(A)-(D).

Arzon complains in his motion that he suffers from sleep apnea and that since his incarceration, his health has deteriorated as he "has not been able to sleep at night due to complications with his breathing." He asserts he has been neglected by medical staff at FCI Fort Dix despite seeking help for "complications" related to his condition.

In response, the Government argues, and the medical records confirm, that Arzon is a 53-year-old ambulatory male who has a history of sleep apnea and snoring and has been seen regularly by medical staff over the last five years. While Arzon reported that he suffered from hypertension at the time of his sentencing, the medical records also show that he is screened for hypertension at every medical encounter, consistently yielding normal blood pressure readings. Arzon was designated as overweight on May 24, 2022, and diagnosed with a suspected hernia on

November 15, 2024.  With regard to his sleep apnea, Probation confirmed that Arzon requested a C-PAP machine on September 26, 2024, and received such a machine on November 5, 2024. The records indicate that Arzon was issued the C-PAP machine "for as long as the patient needs the equipment while in the BOP."  Other courts have determined that sleep apnea is not an extraordinary and compelling reason justifying compassionate release.  *See United States v. White*, No. 20-32, 2023 WL 3072821, at *3 (E.D. La. Apr. 25, 2023) (citing *United States v. Washington*, No. 15-200, 2022 WL 17251155, at *3 (E.D. La. Nov. 28, 2022) ("Like hypertension, obesity is a very common condition, and therefore cannot be considered extraordinary. . . Additionally, other sections of this Court have held that obesity, sleep apnea, and other similar common conditions are not enough on their own to warrant compassionate release."); *United States v. Morgan*, No. 93-491, 2022 WL 16529940, at *4 (E.D. La. Oct. 28, 2022) ("Sleep apnea does not constitute an extraordinary and compelling reason warranting compassionate release."); *United States v. Jones*, No. 15-61, 2020 WL 3606369, at *5 (E.D. La. July 2, 2020) (Morgan, J.) ("Sleep apnea and hypertension are not [on] the CDC's list of COVID-19 risk factors, and Jones has not met his burden of showing they render him particularly susceptible to COVID-19.")).  Arzon's commonplace medical conditions do not elevate his purported risk of severe illness to the level of an extraordinary and compelling reason to grant compassionate release.

Arzon's medical records further reflect that he has a history of non-compliance with medical advice and recommendations.  Prior to being issued the C-PAP machine on November 5, 2024, Arzon was a "no show" for two appointments scheduled in reference to his sleep apnea complaints and other matters on November 15, 2023, and December 5, 2023.  In addition, Arzon

refused to provide a fecal sample to screen for colon cancer on April 23, 2024. Finally, Arzon refused an abdominal ultrasound that was ordered in light of his complaints about a suspected hernia on January 15, 2025. Courts from across the country have rejected motions for compassionate release based on an inmate's medical condition where he has refused or failed to comply with prescribed treatment regimens. *See United States v. Oliver*, No. 21-50170, No. 21-50171, 2022 WL 4285598, at *1 (9th Cir. Sept. 16, 2022) (holding that the prisoner's "failure to adhere to his prescribed treatments undermines his assertion that the BOP's inadequate medical care is an extraordinary and compelling reason for release"); *United States v. Colmenares Fierro*, No. 21-40566, 2022 WL 2357078, at *1 (5th Cir. June 30, 2022) (recognizing that an inmate's declining treatment for latent tuberculosis precluded him from relying on this condition as a basis for compassionate release); *United States v. Broomfield*, No. 20-14514, 2022 WL 896825, at *1 (11th Cir. Mar. 28, 2022) (rejecting motion for compassionate release filed by prisoner who refused to take medications to control his blood pressure or to comply with his doctor's advice to watch his diet and to exercise); *United States v. Glasper*, 854 F. App'x 748, 749-50 (7th Cir. 2021) (denying compassionate release because inmate had refused treatment for diabetes in prison, his asthma was well controlled, and his hypertension was not severe which undercut his assertion that his medical conditions presented an extraordinary and compelling reason for release); *United States v. Waldron*, No. 1:15-cr-41-TC, 2023 WL 258456, at *2 (D. Utah Jan. 18, 2023) (rejecting compassionate release motion filed by prisoner who claimed to have high blood pressure but refused to submit to blood pressure checks); *United States v. Patton*, No. 16-40113-01-DDC, 2022 WL 2134197, at *5 (D. Kan. June 14, 2022) (declining to grant relief to prisoner who complained of gastroenterological issues and alleged lack of treatment where he refused an outside medical trip

for those issues, remarking that "[i]f Mr. Patton's gastroenterological issue isn't extraordinary enough to warrant a trip for diagnosis, it certainly isn't extraordinary enough to warrant compassionate release from a prison sentence following serious felon[y] offenses"); *United States v. Rodriguez-Sanchez*, No. 8:18-cr-299-VMC-AAS, 2021 WL 3912242, at *2 (M.D. Fla. Sept. 1, 2021) (denying compassionate release to prisoner who was a "no show" for multiple medical appointments for latent tuberculosis).   As the court reasoned in *United States v. Gonzalez Zambrano* regarding a prisoner who refused to be inoculated with the COVID-19 vaccine:

> Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release.  It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.

No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021).

Arzon's inmate profile, contained in the BOP records, reveals that he is housed in a two-man cell in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and has no physical limitations.   Arzon is classified as a BOP Medical Care Level 1 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."  Arzon's reported medical conditions are not terminal or serious, do not require specialized medical care, do not substantially diminish his ability to provide self-care in the prison setting, and do not limit his activities of daily living.  Contrary to his assertions, Arzon has not shown that he has received inadequate medical care or been subject to negligence preventing him from providing self-care while incarcerated at FCI Fort Dix.

Arzon also complains of "ongoing outbreaks of infectious disease and ongoing public health emergencies at FCI Fort Dix" as an extraordinary and compelling reason to justify compassionate release. Specifically, Arzon complains that the water is contaminated and that inmates at FCI Fort Dix are at an "increased risk" of developing various ailments because of the "PFSA" water contamination.

Section 1B1.13(b)(1)(D) is concerned with "an 'ongoing outbreak of infectious disease' at a 'correctional facility'" that, due to a defendant's "personal health risk factors and custodial status," "place[s] the defendant at 'increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.'" *United States v. Stehley*, No. 3:16-CR-14, 2023 WL 8014078, at *7 (W.D. Pa. Nov. 9, 2023) (quoting U.S.S.G. § 1B1.13(b)(1)(D)(i), (ii)). Here, Arzon has failed to show that FCI Fort Dix is actually affected with an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority. U.S.S.G. § 1B1.13(b)(1)(D)(i). Furthermore, Arzon's medical records demonstrate he has suffered no incidents of contracting an infectious or communicable disease while incarcerated at FCI Fort Dix. Arzon's medical conditions thus do not appear to put him at increased risk of suffering severe medical complications or death as a result of the alleged water contamination at FCI Fort Dix as required under U.S.S.G. § 13(b)(1)(D)(ii). Finally, Arzon has failed to show the risk cannot be adequately mitigated in a timely manner. U.S.S.G. § 13(b)(1)(D)(iii). As the Fifth Circuit has previously held, "it is the actuality, not the risk, of terminal illness that makes a prisoner's circumstances extraordinary." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023). Hence, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due

14

to fear of communicable disease, even when those prisoners were in poor health." *Id.* (citing *United States v. Thompson*, 984 F.3d 431, 432-34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); *United States v. Rodriguez*, 27 F.4th 1097, 1098-1100 (5th Cir. 2022) (denying relief where COVID-19 fearing movant suffered from heart failure)).

Arzon complains further of "deprived conditions suffered during the pandemic" as an extraordinary and compelling reason to justify compassionate release. Specifically, Arzon asserts that the conditions he suffered at FCI Fort Dix during COVID-19 made "his confinement more punitive." First, the COVID-19 pandemic is over. Both international and domestic heath authorities, including the World Health Organization, the United States Centers for Disease Control and Prevention, and the U.S. Federal Government, have made clear that the COVID-19 pandemic has ended. Moreover, it is well recognized, that prison conditions caused by the COVID-19 pandemic, such as lockdowns, are not a basis for compassionate release. "It is more ordinary than it is extraordinary: 'the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.'" *United States v. Hudson*, No. 10-329, 2021 WL 2912012, at *4 (E.D. La. July 12, 2021) (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020); *United States v. Iruegas*, No. 18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021)). Therefore, Arzon has failed to demonstrate that an extraordinary and compelling reason exists to release him from confinement with respect to his medical condition or the conditions of his confinement.

D.    Family Circumstances

Arzon contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release. Arzon states that his 79-year-old mother suffers from stage 4 cancer and is in need of a caregiver. According to Arzon, his sister, Aida Arzon, assumed the caregiving responsibilities for their mother during his incarceration, but that she can no longer fulfill this obligation due to her work hours and her children. In addition, Arzon alleges that his sister is experiencing health problems which make it impossible for her to care for their mother. Arzon maintains that he is the only person available who can care for their mother while she undergoes chemotherapy. Probation, however, confirms that Arzon's mother passed away on October 3, 2024, rendering this ground for compassionate release moot.[3]

E.    Other Reasons

Arzon also seeks compassionate release arguing that he is entitled to an offense level reduction of one additional point for acceptance of responsibility and that his criminal history points calculation was in error. While the current policy statement acknowledges that other reasons not specifically enumerated in the policy statement may provide a basis for compassionate release, Arzon's claims here are not cognizable under the "catchall" provision of a compassionate release motion. *See* U.S.S.G. § 1B1.13(b)(5).

> (5)    Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4).

---

[3] https://www.hooperfuneral.com/obituaries/iris-pimentel

U.S.S.G. § 1B1.13(b)(5).   Here, Arzon has failed to present any other circumstances or combination of circumstances that, considered by themselves or together with any of the reasons specified in paragraphs (1) through (4), are similar in gravity to those already described above. Arzon's arguments concerning the calculation of his guidelines range are not cognizable as "extraordinary and compelling" reasons justifying compassionate release and are more appropriately raised on direct appeal or in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  *Escajeda*, 58 F.4th at 188.  Most importantly, these claims were argued on direct appeal and were specifically rejected by the Fifth Circuit as lacking in merit.[4]

F.    <u>Rehabilitation</u>

In addition, Arzon maintains that his post-sentence rehabilitation, as evidenced by the courses he has taken, the programs he has completed, and his acceptance of responsibility, establishes extraordinary and compelling reasons for compassionate release.  Specifically, Arzon's Inmate Education Data Transcript shows that he has completed GED classes, various programs regarding employment opportunities and written communication, classes concerning anger and anxiety management, and other courses regarding reading and spelling, financial literacy, and health.  Regarding rehabilitation of the defendant, the Sentencing Guidelines recognize: "Pursuant

---

[4] An adjustment under subsection § 3E1.1(b) can only be granted upon a formal motion by the Government at the time of sentencing.  In this case, the Government moved to have all three points for acceptance of responsibility removed, arguing that Arzon did not truthfully admit his criminal conduct and was a fugitive for eight years.  This argument does not appear to conflict with the reasoning behind Amendment 820 to the United States Sentencing Guidelines which responded to circuit conflicts on whether the government could withhold a motion if a defendant moved to suppress evidence or raised sentencing challenges.  In this case, the trial court granted a two-point reduction for acceptance of responsibility, but agreed with the Government's position regarding the third point.  As for his DUI conviction, the Fifth Circuit affirmed the trial court's overruling his objection regarding the inclusion of the conviction in his criminal history score calculation.  The appellate court found that documents procured by the probation officer – a Certificate of Disposition and a National Crime Information Center record bore a sufficient indicia of reliability and Arzon presented no competent rebuttal evidence at sentencing.

to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected."  *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No. 16-

CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release).  Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act."  *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020).  In any event, in *United States v. Comb*, the court found a similar BOP log listing a defendant's participation in rehabilitative programs to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order."  No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025).  This court concurs.

In this instance, Arzon appears to have a relatively minor disciplinary history at the BOP, which includes one infraction.  On October 19, 2021, Arzon was cited for possessing a hazardous tool for which he lost 41 days of good conduct time and 180 days of phone and commissary privileges.  While Arzon appears to have generally maintained a good disciplinary record while incarcerated, other courts have found a similar argument not to be extraordinary and compelling.  *See United States v. Campos*, No. 22-5216,  2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'"

19

(quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean disciplinary record").

Thus, Arzon has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Or. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Arzon will continue on the path to rehabilitation, but declines to exercise its

discretionary authority under § 3582 at this time based on his medical concerns, the conditions of his confinement, the calculation of his sentence, or his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

G.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). The case at bar arose from an October 2010 Drug Enforcement Administration ("DEA") investigation into a heroin trafficking organization out of New York. Agents ultimately intercepted telephone calls between Co-defendant William Alejandro Ramirez ("Ramirez"), a Houston resident, and an unindicted co-conspirator ("unindicted co-conspirator #1") from which they learned that unindicted co-conspirator #1 and Arzon had traveled to Houston to supervise a shipment of cocaine from Houston to New York. On January 24, 2011, DEA agents observed Arzon leave a Houston residence in a Nissan while Ramirez and unindicted conspirator #1 followed in tandem in another vehicle. Arzon continued eastbound from Houston, where a sheriff's deputy stopped him after he entered Jefferson County, Texas. The deputy's drug-detecting canine alerted to the presence of contraband in the car. A search of the vehicle revealed

32 bundles that contained 31.91 kilograms of cocaine. Arzon was arrested that day without incident, and Ramirez was subsequently arrested on April 4, 2011. Arzon was released after posting a $200,000.00 bond on January 28, 2011, and he remained at large following the issuance of a federal arrest warrant until January 31, 2019. Investigation revealed that he had moved to Florida at some point and had obtained a fraudulent driver's license that bore his photograph but displayed the name "Roberto Roland."

At the time of his sentencing in 2020, Arzon's criminal history included prior convictions for assault, grand larceny, manslaughter, and DWI. Arzon had been sentenced to prison for the assault, larceny, and manslaughter convictions and had served one month in jail for his DWI conviction prior to the commission of the instant offense. With respect to the manslaughter conviction, the arrest report shows that Arzon shot and killed a 20-year-old male at a housing development on April 30, 1989. Furthermore, Arzon was arrested for the current federal offense less than a year after completing almost seven years on parole following thirteen years in prison for his manslaughter conviction. The PSR reflects other charges for criminal possession of stolen property, grand larceny, and unauthorized use of a motor vehicle on July 22, 1988, but the disposition is unknown. Related to the case at bar are state court charges for possession of a controlled substance that were never prosecuted. Moreover, Arzon has a history of poly-substance abuse which includes the frequent use of marijuana and alcohol since the ages of 14 and 15, respectively, and the use of cocaine "once or twice." His PSR indicates that Arzon reported he drank a "six-pack" daily and smoked 5 marijuana cigars daily up to the date of his arrest for his offense of conviction. Therefore, releasing Arzon at this time could facilitate and exacerbate his

continued drug and alcohol abuse, as he would gain unfettered access to variety of illegal substances and alcohol outside the BOP.

In support of his motion, Arzon points to the non-violent nature of his offense of conviction, highlights his good conduct while in prison, and maintains that he is at low risk for recidivism. Courts have long recognized, however, that "continued drug dealing does constitute a danger and threat to the community." *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-cr-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate release to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No. 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))). Furthermore, although Arzon states in his motion that he is no longer a threat to society because he is not the same person he was six years ago, Probation disagrees, concluding that "the facts of his conviction, his violent history, and the absence of

23

'extraordinary and compelling circumstances,'" indicate that the motion should be denied.  In light of Arzon's criminal history, which includes acts of violence, as well as his noncompliance with prison rules and long-term history of substance abuse, the court agrees with Probation's assessment that Arzon poses a future danger to the community if released from prison at this time.

In addition, granting Arzon compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100.  In the case at bar, releasing Arzon after he has served only about 77 months of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall far short of providing just punishment and adequate deterrence to criminal conduct.

"Compassionate release is discretionary, not  mandatory, and may be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In *United States v. McKinney*, No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La. Apr. 18, 2023), the court denied relief to a prisoner who had end-stage renal failure and had a portion of his foot amputated despite the Government's concession that the defendant had established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i), finding that "granting compassionate release would not comport with the factors enumerated in

25

Section 3553(a)."  The court pointed to McKinney's extensive criminal history that included several drug convictions, firearm convictions, and simple battery.  *Id.* at *3.  The *McKinney* court noted that the inmate had repeatedly failed to comply with previous terms of probation and parole and clearly lacked respect for the law.  *Id.*  The court concluded that a reduction in sentence would not equate to a "just punishment" under Section 3553(a)(2)(A).  The court expounded:  "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect of the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant."  *Id.*  This court has the same concerns in the case at bar.  In view of the nature and circumstances of Arzon's offense of conviction, his violent criminal history, his recidivism, his history of poly-substance abuse, and his absconding from the state while on bond and remaining a fugitive for eight years, the court cannot conclude that his early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.  On balance, as in *McKinney*, the § 3553(a) factors do not support Arzon's release.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Arzon's track record is abysmal.  There is no reason to believe that Arzon would not revert to engaging in drug dealing and acts of violence as well as resuming his daily poly-substance abuse if released from prison at this time.

26

III.    Conclusion

In sum, Arzon has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 135-month sentence of imprisonment imposed upon Arzon for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture.  Neither his health, the conditions of his confinement, the length of his incarceration, nor his efforts at rehabilitation merit a reduction of his sentence under these circumstances.

Accordingly, it is ORDERED that Arzon's *pro se* Emergency Motion for Compassionate Release and Appointment of Counsel (#134) is DENIED.  It is further ORDERED that Arzon's *pro se* Motion for Extension of Time to File Response/Reply (#140) and *pro se* Motion for Leave to File Reply (#141) are DENIED as MOOT.

SIGNED at Beaumont, Texas, this 27th day of June, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

27